**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Rodney D. TOW, Defendant–Appellant.**

**No. 98CA0450.**

Colorado Court of Appeals, Div. III.

July 22, 1999.

Certiorari Denied Feb. 7, 2000.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1998.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, John T. Carlson, Deputy State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Rodney D. Tow, appeals the judgment of conviction entered after a bench trial in which he was found guilty of two counts of criminally negligent homicide. We affirm.

While driving his vehicle, defendant proceeded through a stop sign without stopping and struck another vehicle. The two occupants of the other vehicle died from their injuries.

Defendant was charged with two counts of vehicular homicide but was convicted of two counts of criminally negligent homicide.

## I.

Defendant contends the trial court erred in convicting him of criminally negligent homicide because neither he nor the prosecution requested the court to consider such a lesser-included offense. He also contends the court failed to give him notice that it might consider such a lesser-included offense, thereby depriving him of his constitutional right to present closing argument and rendering the waiver of his right to a jury trial invalid. We disagree.

We note initially that defendant does not assert that criminally negligent homicide is not a lesser-included offense of vehicular homicide. Hence, we will assume for purposes of our analysis that it is.

First, we disagree with defendant's contention that no party requested the court to consider the offense of criminally negligent homicide.

■ Either the prosecution or the defense is entitled, upon request, to an instruction on a lesser-included offense whenever there is a rational basis for the fact-finder to acquit the defendant of the original offense charged but nevertheless to convict him or her of a lesser-included offense. *See People v. Halstead*, 881 P.2d 401 (Colo.App.1994).

■ Here, before defendant's counsel presented her closing argument, the court engaged in a colloquy with counsel regarding offenses the court could consider. During that discussion, the prosecutor initially stated his understanding that criminally negligent homicide was not a lesser-included offense of vehicular homicide. The court, however, disagreed, citing *People v. Bettis*, 43 Colo.App. 104, 602 P.2d 877 (1979). The prosecutor thereafter indicated that, if the court determined it was such a lesser-included offense, then the court could consider it. After completion of closing arguments, the court convicted defendant of two counts of that offense.

Upon this record, the uncharged offense of criminally negligent homicide was properly before the court. Accordingly, we reject defendant's contention that the court raised the lesser-included offense *sua sponte*, and improperly acted as an advocate for the prosecution.

■ For the same reasons, and also because defense counsel was apprised of the prosecution's request before delivery of her closing argument, we reject defendant's related contention that the court deprived defendant of his constitutional right to present closing argument. Moreover, in view of our conclusion, we also reject defendant's contention that his waiver of a jury trial was not knowing and intelligent because the trial court failed to advise him that it might consider unrequested lesser-included offenses.

## II.

Relying upon *People v. Bagby*, 734 P.2d 1059 (Colo.1987), defendant contends that, because the General Assembly has specifically proscribed and directed punishment for his conduct under § 42–4–1402(2), C.R.S. 1998, which prohibits careless driving causing death, the trial court erred in convicting him of criminally negligent homicide under the general provisions of § 18–3–105, C.R.S.1998. We disagree.

■ Enactment by the General Assembly of a specific criminal statute does not preclude prosecution under a general criminal statute unless a legislative intent to limit prosecution to the special statute is shown. *People v. Bagby, supra.*

■ To determine whether the General Assembly intended by enacting a specific statute to preclude prosecution under a general statute, we are directed to focus upon: (1) whether the specific statute invokes the full extent of the state's police powers; (2) whether the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) whether the act carefully defines different types of offenses in detail. *See People v. Smith*, 938 P.2d 111 (Colo.1997); *People v. Bagby, supra.*

■ Here, there is no indication that the Uniform Safety Code, within which the prohibition against careless driving resulting in death is placed, invokes the full extent of the state's police powers. For example, the legislative declaration to the Uniform Safety Code provides:

The general assembly recognizes the many conflicts which presently exist between the state's traffic laws and many of the municipal traffic codes, which conflicts lead to uncertainty in the movement of traffic on the state's highways and streets. These conflicts are compounded by the fact that today's Americans are extremely mobile and that while this state enjoys a large influx of traffic from many areas, there is some lack of uniformity existing between the "rules of the road" of this state and those of other states of the nation. The general assembly, therefore, declares it *the*

purpose of this article to alleviate these conflicts and lack of uniformity by conforming, as nearly as possible, certain of the traffic laws of this state with the recommendations of the national committee of uniform traffic laws and ordinances as set forth in the committee's 'Uniform Vehicle Code.'

Section 42–4–102, C.R.S.1998 (emphasis added).

This declaration, unlike the one in the statute at issue in *Bagby,* does not contain broad language suggesting that the General Assembly sought to exercise the full police power of the state and considered the full range of possible sanctions in selecting those most appropriate for violations of the code. Rather, the declaration reflects the narrow purpose of alleviating conflicts and achieving uniformity among traffic laws.

Concerning the second factor, we agree that § 42–2–1402(2), C.R.S.1998, proscribing careless driving resulting in death, is part of an act creating a comprehensive and thorough regulatory scheme to control traffic conduct. However, we disagree that the Uniform Safety Code was intended to control *all* aspects of the substantive area, containing a complete and exclusive list of offenses and sanctions flowing from improper traffic conduct.

For example, vehicular homicide is specifically prohibited by § 18–3–106, C.R.S.1998, which is contained in the general provisions of the criminal code. Vehicular assault is also specifically proscribed in the criminal code, *see* § 18–3–205, C.R.S.1998, even though the Uniform Safety Code itself prohibits driving in a reckless manner. *See* § 42–4–1401, C.R.S.1998.

In addition, we note that the Uniform Safety Code contains no provisions regulating many forms of intentional conduct in the operation of motor vehicles. If the Uniform Safety Code was intended to contain the exclusive and complete regulations for *all* traffic conduct, we might be forced to conclude, for example, that an actor who intentionally strikes and kills another while driving a motor vehicle could not be convicted of murder because the Uniform Safety Code does not contain such an offense.

As to the third factor, we acknowledge that the Uniform Safety Code defines types of offenses in detail. Indeed, the statute defining careless driving resulting in death is very specific. In our view, however, the specificity of the statute does not overcome the otherwise missing legislative direction that the Uniform Safety code should cover all types of conduct occurring while a motor vehicle is being operated.

Hence, we conclude that, by enacting the statute prohibiting careless driving resulting in death, the General Assembly did not intend to preclude prosecution for criminally negligent homicide committed during the operation of a vehicle. *See People v. Bagby, supra.* Therefore, the trial court did not err in convicting defendant of that crime.

The judgment is affirmed.

Judge NEY and Judge PIERCE* concur.