The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Tony BLUE, Defendant–Appellee.

No. 10CA1254.

Colorado Court of Appeals, Div. I.

March 17, 2011.

Certiorari Dismissed June 20, 2011.

§ 24–51–1105, C.R.S.2010.

Daniel H. May, District Attorney, Deborah Pearson, Deputy District Attorney, Brien Cecil, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado; Adam Steigerwald, Deputy State Public Defender, Colorado Springs, Colorado, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

The People appeal the trial court's order reducing a charge against defendant, Tony Blue, from one count of attempt to influence a public servant to one count of false reporting to authorities. We reverse and remand.

## I. Background

In December 2009, a police officer was dispatched to a public library regarding a man who matched the description of a wanted individual on the Crime Stoppers website. On the sidewalk outside the library, the officer approached Blue and asked, "Excuse me, Mr. Blue, can I have a word with you, please?" Blue replied that he was not Mr. Blue, and told the officer that his name was Tony Mackie. Blue told the officer that he did not have identification.

Shortly thereafter, a second police officer arrived at the library and asked the first officer if he had yet patted down Blue. The first officer responded that "[he] had not patted Mr. Blue down," and turning to Blue said, "[B]ecause you are Mr. Blue, right?" In response, Blue smiled and said "yes." After confirming that there was an outstanding warrant for Blue's arrest, the officers arrested him. During a patdown search, the officers found a Colorado driver's license and Social Security card in the name of Tony Blue.

As relevant here, the People charged Blue with one count of attempt to influence a public servant. Blue filed a pretrial motion to dismiss the attempted influence count, ar-

guing that providing a false name to a police officer was "more specifically proscribed by the crime of False Reporting to Authorities."

On May 7, 2010, the trial court granted Blue's motion to dismiss, and ordered that the attempted influence count, a felony, be reduced to one count of false reporting to authorities, a class three misdemeanor. Seven days later, the People filed a motion to reconsider, which the trial court denied on June 16, 2010. On June 18, 2010, the People filed a notice of interlocutory appeal.

## II. Timeliness of the Appeal

■ Blue contends that this court lacks jurisdiction over this appeal, because the People's notice of interlocutory appeal was not filed within ten days of the trial court's order dismissing the attempted influence count, pursuant to C.A.R. 4.1. We disagree.

### A. Standard of Review

Because the underlying facts are not in dispute and the issue is purely one of law, we review the issue of jurisdiction de novo. *Medina v. State*, 35 P.3d 443, 452 (Colo.2001) (citing *Springer v. City & County of Denver*, 13 P.3d 794, 799 (Colo.2000)).

### B. Analysis

■ A proceeding is interlocutory if it intervenes between the commencement of and the final decision in a case. *People v. Curren*, 228 P.3d 253, 256 (Colo.App.2009) (citing *People v. Medina*, 40 Colo.App. 490, 492, 583 P.2d 293, 296 (1978)). Ordinarily, a prosecution's appeal must be filed in the court of appeals within forty-five days of the date of the order appealed from. C.A.R. 4(b)(2). However, when the prosecution appeals from an order "dismissing one or more but less than all counts of a charging document prior to trial," as is the case here, then the procedures set forth in C.A.R. 4.1 govern the appeal. C.A.R. 4(b)(3). C.A.R. 4.1(b) requires that "[n]o interlocutory appeal shall be filed after ten days from the entry of the order complained of."

Here, both C.A.R. 4(b)(3) and 4.1 apply, because the People appeal from a pretrial order dismissing one but fewer than all the counts against Blue.

■ Relying on *People v. Powers*, 47 P.3d 686, 689 (Colo.2002), the People assert that their notice of interlocutory appeal is timely, because they had ten days to commence an interlocutory appeal from the date of the trial court's order denying the motion to reconsider. Under *Powers*, if Colorado criminal rules do not expressly provide for reconsideration, then a reconsideration motion is timely as long as it is filed within the specified time for taking an appeal-here, ten days. *See Powers*, 47 P.3d at 689; *cf. People v. Zhuk*, 239 P.3d 437, 439–40 (Colo.2010) (noting that amended C.A.R. 26(a) superseded *Powers* as to computation of the ten-day period).

*People v. Tuffo*, 209 P.3d 1226 (Colo.App. 2009), is directly on point. There, the division held that "a proper and timely motion for reconsideration suspends the order's finality such that the full time for appealing begins to run only when reconsideration is denied." *Id.* at 1229. Thus, the People adhered to that time limit by filing a notice of interlocutory appeal within ten days of the trial court's order denying the motion to reconsider. Accordingly, we conclude the People's interlocutory appeal was timely filed.

## III. Dismissal of Attempted Influence Charge

The People contend that the trial court erred in dismissing the attempted influence charge for three reasons: (1) Colorado law allows the People to prosecute Blue for both general (attempt to influence) and specific (false reporting) offenses (although it seeks to prosecute Blue here only on the attempted influence charge); (2) the offense of false reporting to authorities is not part of a comprehensive regulatory scheme intended to replace more general provisions of the criminal code; and (3) prosecution of Blue under the general statute does not violate his right to equal protection under the United States Constitution. We agree with all three contentions.

## A. Standard of Review

The interpretation of a statute is a question of law subject to de novo review. *People v. Sorrendino*, 37 P.3d 501, 503 (Colo.App. 2001) (citing *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000)). We also review de novo an interpretation of a constitutional provision. *People v. Clendenin*, 232 P.3d 210, 212 (Colo.App.2009).

When interpreting a statute, we look first to the plain language of the statute before invoking alternative canons of statutory construction. *People v. Banks*, 9 P.3d 1125, 1128 (Colo.2000). To discern the legislative intent, a reviewing court looks at the statute's language and gives statutory words and phrases their plain and ordinary meaning. *People v. Davis*, 218 P.3d 718, 723 (Colo.App. 2008). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *People v. Hill*, 228 P.3d 171, 173–74 (Colo.App.2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

We read the statute as a whole to give "consistent, harmonious and sensible effect to all of its parts," in accordance with the presumption that the legislature intended the entire statute to be effective. *Hill*, 228 P.3d at 174 (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo.2005)). "A statutory interpretation leading to an illogical or absurd result will not be followed." *Frazier v. People*, 90 P.3d 807, 811 (Colo.2004). We avoid constructions that are at odds with the legislative scheme. *Hill*, 228 P.3d at 174 (citing *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006)).

## B. General and Specific Offenses

In Colorado, "a single transaction may give rise to the violation of more than one statute." *People v. James*, 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972). "When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." § 18–1–408(1), C.R.S.2010. If different enactments define the same conduct as criminal, then the offender may be prosecuted under any one or all of the enactments, subject to certain limitations. § 18–1–408(7), C.R.S.2010. Under section 18–1–408(1)(d), C.R.S.2010, a defendant may not be convicted of more than one offense if "[t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." If a defendant's single transaction gives rise to the violation of more than one statute, then the prosecutor may determine under which statute or statutes to prosecute the defendant. *James*, 178 Colo. at 404, 497 P.2d at 1258.

As noted, Blue was charged with one count of attempt to influence a public servant, § 18–8–306, C.R.S.2010. The elements of the attempted influence offense are (1) an attempt to influence a public servant; (2) by means of deceit or by threat of violence or economic reprisal; and (3) with the intent to alter or affect the public servant's decision or action. § 18–8–306; *People v. Schupper*, 140 P.3d 293, 298 (Colo.App.2006).

In his motion to dismiss the attempted influence charge, Blue argued that "his actions are more specifically proscribed by the crime of False Reporting to Authorities, which occurs when an individual 'knowingly provides false identifying information to law enforcement authorities.'" § 18–8–111(1)(d), C.R. S.2010. Relying on section 18–1–408(1)(d), Blue argued that if he were charged with both attempted influence and false reporting, he could only be convicted of one offense, because "[t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."

Section 18–1–408(1)(d) prohibits convictions for two offenses that differ solely by prohibiting general and specific conduct. However, we must read this section in the context of the whole statute, which empowers the People to prosecute the defendant for multiple offenses if the defendant's conduct "establishes the commission of more than one offense." § 18–1–408(1).

We conclude that false reporting is not a specific instance of attempt to influence a public servant. The crime of false reporting penalizes those who provide untruthful information to public officials, regardless of an attempt to influence public officials.[1] The attempted influence offense can occur without any false reporting at all. Thus, the attempted influence charge and the false reporting charge do not differ solely by prohibiting general and specific conduct.

Accordingly, the trial court erred when it granted Blue's motion to dismiss the attempted influence charge and thereby amended the charge to false reporting to authorities.

## C. Comprehensive Regulatory Scheme

Enactment of a specific criminal statute does not preclude prosecution under a general criminal statute, unless statutory language indicates that the legislature intended to limit prosecution to the specific statute. *People v. Bagby,* 734 P.2d 1059, 1061 (Colo.1987) (citing *People v. Westrum,* 624 P.2d 1302, 1303 (Colo.1981)). To determine whether the General Assembly intended that a specific statute would preclude prosecution under a general statute, we address (1) whether the specific statute invokes the full extent of the state's police powers; (2) whether the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) whether the act carefully defines different types of offenses in detail. *People v. Tow,* 992 P.2d 665, 667 (Colo.App.1999). Where a statute does not satisfy at least the first two prongs of the *Tow* test, it does not supplant the general statute. *People v. Sharp,* 104 P.3d 252, 255 (Colo.App.2004).

An example of a comprehensive regulatory scheme is the Colorado Liquor Code. Where a defendant's conduct violated a specific provision of the liquor code, the Colorado Supreme Court held that the defendant must be prosecuted under the code even though the same conduct also violated provisions in the general criminal code. *Bagby,* 734 P.2d at 1061. In that case, the court noted that in adopting the liquor code, the General Assembly invoked the full police power of the state, created a comprehensive regulatory scheme, and detailed liquor-related offenses, often with reference to specific provisions of the criminal code. *Id.* at 1062.

Similarly, the supreme court held that the General Assembly intended that conduct violating the specific offenses of the Limited Gaming Act must be prosecuted pursuant to that act rather than under the otherwise applicable but more general offenses of the criminal code. *People v. Warner,* 930 P.2d 564, 568 (Colo.1996). The supreme court noted that like the liquor code, the limited gaming act invokes full police powers and creates a thorough regulatory scheme to control limited stakes gambling in Colorado. *Id.* Also, the criminal offenses in the act specifically relate to gambling and are defined in extraordinary detail. *Id.*

Here, section 18–8–111, criminalizing false reporting to authorities, cannot be construed as part of a comprehensive regulatory scheme comparable to Colorado's liquor and limited gaming codes. Under the second *Tow* factor, section 18–8–111 is not part of an act creating a comprehensive or thorough regulatory scheme to control the substantive area of false reporting to authorities. *See* 992 P.2d at 667. Under the third factor of *Tow,* section 18–8–111 briefly defines four types of false reporting to authorities. *See id.* It does not specify "in extraordinary detail" offenses that are typical of a comprehensive regulatory scheme. *See Warner,* 930 P.2d at 568. Rather, section 18–8–111 is one provision of the criminal code invoking the state's police power to criminalize four types of false reporting to authorities. Thus, the General Assembly's enactment of section 18–8–111 was not part of a comprehensive and thorough regulatory scheme to control all aspects of a substantive area. Accordingly,

---

1. False reporting may involve providing false information without the intent to affect a police officer's decision when, for example, a celebrity uses a pseudonym to protect his or her privacy. In contrast, false reporting may also involve an attempt to influence a public official when, as here, a defendant has an outstanding warrant which he or she does not want the police to discover.

for this reason as well, the trial court erred when it granted Blue's motion to amend the attempted influence count to one count of false reporting.

### D. Equal Protection

■ In the trial court, Blue argued that charging him with both attempt to influence a public servant and false reporting to authorities would violate his right to equal protection under the United States Constitution, because the offenses provide different penalties for identical conduct. On appeal, the People contend that charging Blue with attempted influence does not violate his right to equal protection, because the two offenses penalize different conduct and require different mens rea. We agree with the People.

■ The United States Constitution and the Due Process Clause of the Colorado Constitution guarantee a defendant equal protection under the law. U.S. Const. amend. XIV; Colo. Const. art. II, § 25. In the context of criminal law, equal protection prohibits punishing identical criminal conduct with disparate penalties. *People v. Young*, 859 P.2d 814, 816 (Colo.1993). The corollary to this rule is that if a criminal statute proscribes different penalties for identical conduct, and a defendant is convicted under the statute imposing the harsher penalty, then the defendant's right to equal protection is violated unless there are reasonable differences or distinctions between the statutes at issue. *People v. Stewart*, 55 P.3d 107, 114 (Colo.2002). To determine whether two statutes proscribe identical conduct requires a facial examination of the elements constituting each crime. *Id.* at 115. If reasonable distinctions can be drawn between the statutes, then a defendant's right to equal protection is not offended. *Westrum*, 624 P.2d at 1303. A defendant's right to equal protection is not violated unless the classification of the statutes is arbitrary or unreasonable. *People v. Blair*, 195 Colo. 462, 470, 579 P.2d 1133, 1140 (1978).

Here, the two statutes at issue penalize different conduct and require different mental states. Attempt to influence a public servant criminalizes any attempt to influence a public servant, which is not a requirement of false reporting to authorities. § 18–8–306. In contrast, a person commits false reporting to authorities by "knowingly provid[ing] false identifying information to law enforcement authorities." This offense does not require a showing of an attempt to influence a public official. § 18–8–111(1)(d). Accordingly, the two offenses penalize different conduct.

Also, the two offenses require different mental states. First, the attempted influence count requires proof of intent, while false reporting requires the lesser mens rea standard of a "knowing" act. For example, a defendant might "knowingly" provide false information to a police officer, thereby committing false reporting, but without the intent to "alter or affect the [officer's] decision, vote, opinion, or action" and thereby not commit the offense of attempt to influence a public servant. Therefore, a "reasonable distinction" can be drawn between the attempted influence count and false reporting to authorities, and as a result, Blue's right to equal protection is not offended. *See Westrum*, 624 P.2d at 1303.

Thus, there is no violation of equal protection because the distinction between the two offenses is not "arbitrary or unreasonable," but is instead based on different conduct and distinct mental states. *Blair*, 195 Colo. at 470, 579 P.2d at 1140. Accordingly, the trial court erred when it granted Blue's motion to dismiss the attempted influence count on the basis that charging Blue with attempt to influence a public servant violated his right to equal protection.

The order is reversed, and the case is remanded for reinstatement of the count of attempt to influence a public servant and further proceedings consistent with this opinion.

Judge CARPARELLI and Judge GABRIEL concur.