2012 COA 204

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Michael S. VAN DE WEGHE, Defendant–Appellant.**

**No. 10CA2287.**

Colorado Court of Appeals, Div. I.

Nov. 21, 2012.

John W. Suthers, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Alison Ruttenberg, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

¶ 1 Defendant, Michael S. Van De Weghe, appeals the trial court's judgment of conviction entered upon a jury verdict finding him guilty of attempt to influence a public figure. We conclude that the criminal impersonation statute does not supplant the attempt to influence a public servant statute and, therefore, we affirm.

## I. Background

¶ 2 Van De Weghe is a retired Denver police officer. He resigned from the police force in 1989. Despite having not worked as a police officer for many years, he carried a police badge with him in his wallet.

¶ 3 According to the prosecution's evidence, an Arapahoe County deputy sheriff pulled over Van De Weghe's car after observing him driving without a seatbelt and failing to use his turn signal. When the deputy approached the car, Van De Weghe displayed his police badge and asked the deputy why he had stopped him. After admitting to the traffic offenses, Van De Weghe told the deputy that he was an active duty police officer.

¶ 4 The deputy asked to see the employment credentials that officers normally carry, and Van De Weghe replied he had left them at his home. However, when the deputy asked for Van De Weghe's supervisor's name, Van De Weghe admitted that he was not an active duty officer. The deputy testified at trial that when active duty police officers are stopped for a traffic violation, they often expect to receive a warning rather than a citation.

¶ 5 Initially, Van De Weghe was charged with criminal impersonation and several traffic offenses in relation to the traffic stop. During a motions hearing, the prosecution successfully moved to amend the information to add a count of attempt to influence a public servant. A jury found Van De Weghe guilty of all counts.

¶ 6 In this appeal, Van De Weghe challenges only his conviction of attempt to influence a public servant.

## II. Standard of Review

¶ 7 Interpretation of a statute is a question of law that we review de novo. *People v. Sorrendino*, 37 P.3d 501, 503 (Colo.App.2001) (citing *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000)).

¶ 8 When interpreting a statute, we endeavor to give effect to the legislative intent and refer to the plain language of the statute before invoking canons of statutory construction. *People v. Banks*, 9 P.3d 1125, 1128 (Colo.2000). To discern the legislative intent, we look to the statute's language and give its words and phrases their plain and ordinary meaning. *People v. Davis*, 218 P.3d 718, 723 (Colo.App.2008). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *People v. Hill*, 228 P.3d 171, 173–74 (Colo.App.2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). If, as here, the statutory language is unambiguous, we enforce it as written without resort to other rules of interpretation. *Cf. People v. Summers*, 208 P.3d 251, 253–54 (Colo.2009).

## III. General and Specific Offenses

¶ 9 Van De Weghe asserts that the trial court erred by allowing the prosecution to add the charge of attempt to influence a public servant, because his conduct was more specifically proscribed by the offense of criminal impersonation. We disagree.

¶ 10 The People argue that Van De Weghe did not preserve this issue for appeal, because his objection to the additional charge was based only on the timelines of the motion to amend the information. However, in making his objection, Van De Weghe stated that the additional charge gave "the People essentially two bites at the same apple for the same conduct" and "it's duplicative charging and requires now the defendant [to defend] two different theories for really the same conduct." We conclude that this objection was sufficient to preserve the issue for appeal. *People v. Pahl*, 169 P.3d 169, 183 (Colo.App.2006)(an issue is preserved where

the objection sufficiently alerts "the trial court to a particular issue in order to give the court an opportunity to correct any error").

¶ 11 In Colorado, "a defendant's single transaction [may give] rise to the violation of more than one statute." *People v. Blue*, 253 P.3d 1273, 1277 (Colo.App.2011) (citing *People v. James*, 178 Colo. 401, 404, 497 P.2d 1256, 1258 (1972)). "When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." § 18–1–408(1), C.R.S.2012. With limited exceptions not relevant here, if different enactments define the same conduct as criminal, then a defendant may be prosecuted under any one or all of the enactments. § 18–1–408(7), C.R.S.2012. However, a defendant may not be convicted of more than one offense if "[t] he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." § 18–1–408(1)(d), C.R.S.2012. If a defendant's single transaction gives rise to the violation of more than one statute, the prosecutor may determine under which statute or statutes to charge the defendant. *James*, 178 Colo. at 404, 497 P.2d at 1258.

¶ 12 Here, Van De Weghe was originally charged with one count of criminal impersonation under section 18–5–113, C.R.S.2012. As relevant here, the elements of criminal impersonation are (1) assumption of a false or fictitious identity or capacity, (2) performed with any other act with intent to unlawfully gain a benefit, or to injure or defraud another. § 18–5–113(1)(b)(II), C.R.S. 2012.

¶ 13 The People added the charge of attempt to influence a public servant under section 18–8–306, C.R.S.2012. The elements of that offense are "(1) an attempt to influence a public servant; (2) by means of deceit or by threat of violence or economic reprisal; and (3) with the intent to alter or affect the public servant's decision or action." *Blue*, 253 P.3d at 1277.

¶ 14 In *Blue*, the division held that the crime of false reporting to authorities, section 18–8–111(1)(d), C.R.S.2012, is not a specific instance of attempt to influence a public servant. *Blue*, 253 P.3d at 1278. The division noted that the offense of false reporting penalizes those who provide false information to authorities, regardless of whether such action is taken to gain a benefit from a public official. *Id.* It compared the elements of that offense with the elements of attempt to influence a public servant, which can occur without any false reporting of information at all. *Id.* Thus, it concluded that "the attempted influence charge and the false reporting charge do not differ solely by prohibiting general and specific conduct." *Id.*

¶ 15 Similarly, here, the offense of criminal impersonation, on the one hand, punishes those who assume a fictitious identity with intent to receive a benefit. The attempt to influence offense, on the other hand, can occur without an assumption of a false identity at all. Thus, the two charges "do not differ solely by prohibiting general and specific conduct." *Id.* Accordingly, we conclude that criminal impersonation is not a specific instance of attempt to influence a public servant and the trial court properly allowed the added attempt to influence charge.

## IV. Comprehensive Regulatory Scheme

¶ 16 Van De Weghe nevertheless asserts that the criminal impersonation statute supplants the attempt to influence a public servant statute, because the General Assembly intended to limit prosecution of conduct similar to his to criminal impersonation. We disagree.

¶ 17 Even if we were to assume that criminal impersonation is a specific subtype of attempt to influence a public servant, the "enactment by the General Assembly of a specific criminal statute does not preclude prosecution under a general criminal statute unless a legislative intent is shown to limit prosecution to the special statute." *People v. Bagby*, 734 P.2d 1059, 1061 (Colo.1987). To determine whether the General Assembly intended a specific statute to preclude prosecution under a general statute, we address whether (1) the specific statute invokes the

full extent of the state's police powers; (2) the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) the act carefully defines different types of offenses in detail. *People v. Tow*, 992 P.2d 665, 667 (Colo.App.1999). Unless a specific statute satisfies at least two prongs of this test, it does not supplant the general statute. · *People v. Sharp*, 104 P.3d 252, 255 (Colo.App.2004).

¶ 18 Contrary to Van De Weghe's contention, criminal impersonation is not part of a comprehensive regulatory scheme under the second prong of the *Tow* test. In *Blue*, the division cited the Colorado Liquor Code and the Limited Gaming Act as examples of such comprehensive regulatory schemes. *Blue*, 253 P.3d at 1278. The division noted that the Liquor Code and the Gaming Act were designed to thoroughly regulate all aspects of certain substantive areas. *Id.* Criminal impersonation, however, is part of the Colorado Criminal Code. It is not part of an act creating an overall regulatory scheme designed to thoroughly regulate the substantive area involved. *See id.* (the crime of false reporting to authorities, section 18–8–111, C.R.S.2012, is not part of a comprehensive regulatory scheme). Accordingly, the criminal impersonation statute fails the second prong of the *Tow* test.

¶ 19 Further, under the third prong of the test, the criminal impersonation statute does not define the elements of the crime "in extraordinary detail." *See People v. Warner*, 930 P.2d 564, 568 (Colo.1996). Instead, the criminal impersonation statute is one provision of the Criminal Code invoking a portion of the state's police power to criminalize· certain types of fraudulent impersonation. *See Blue*, 253 P.3d at 1278. It is not designed to regulate all instances of fraudulent impersonation. Accordingly, the statute fails the third prong of the *Tow* test as well, and is therefore not part of a comprehensive and thor-

ough regulatory scheme, designed to control all aspects of a substantive area. Therefore, even if criminal impersonation were a specific instance of attempt to influence a public servant, the criminal impersonation statute's enactment does not prevent prosecution under the attempt to influence a public servant statute.

¶ 20 Thus, the trial court did not err by allowing the prosecution to add the charge of attempt to influence a public servant.[1]

¶ 21 The judgment is affirmed.

Judge WEBB and Judge LOEB concur.

---

1. Van De Weghe asserts that the rule of lenity applies, and requires us to strictly construe criminal statutes in favor of the accused. However, the rule of lenity does not apply here because the meaning of and legislative intent behind the statutes involved are readily discernible through traditional tools of statutory interpretation. *See*

*Summers*, 208 P.3d at 258 (the rule of lenity is "a rule of last resort invoked only 'if after utilizing the various aids of statutory construction, the General Assembly's intent remains obscured'" (quoting *People v. Thoro Prods. Co.*, 70 P.3d 1188, 1198 (Colo.2003))).