Opinion by JUDGE LOEB
¶ 1 Defendant, Jason D. Back, appeals the district court's order denying his Crim. P. 35(c) motion. We affirm, but on grounds different from those employed by the district court.
¶ 2 In this appeal, we interpret sections 17-2-103(11)(b) and 17-22.5-403(8)(b), C.R.S.2012, which both address the length of time that the parole board may return a sex offender to the Department of Corrections (DOC) upon revocation of his or her parole. As set forth below, we conclude that these statutes conflict and cannot be reconciled. We further conclude that the specific and more recent statute, section 17-22.5-403(8)(b), prevails when the parolee is on parole for a sex offense that falls within the purview of the Colorado Sex Offender Lifetime Supervision Act (SOLSA).
I. Background
¶ 3 In 2004, defendant pleaded guilty to one count of sexual assault on a child, a class four felony, and the court sentenced him to sex offender intensive supervised probation for ten years to life.
¶ 4 After twice violating the terms of his probation, defendant was sentenced to two years to life in the custody of the DOC, plus parole of ten years to life.
¶ 5 In 2009, defendant was released on parole.
¶ 6 On October 8, 2010, the parole board revoked defendant's parole and returned him to the DOC for the remainder of his sentence-that is, his natural life-because he had violated the conditions of his parole when he was terminated from a sex offender treatment program for noncompliance.
¶ 7 On November 16, 2010, the appellate body of the parole board denied defendant's appeal, finding that "[t]he hearing and decision were in accordance with [s]tate [s]tatutes and guidelines."
¶ 8 On March 14, 2011, defendant filed a Crim. P. 35(c) motion, arguing, as pertinent to this appeal, that (1) his return to the DOC for the remainder of his sentence was not authorized by statute; and (2) section 17-2-103(1 1) (b)(IV), C.R.S. 2012, only authorized a revocation of his parole for a maximum of 180 days.
¶ 9 After a hearing, the district court denied the motion, concluding that section 17-2-103(1 1)(b)(V), C.R.S. 2012, authorized the parole board to revoke defendant's parole for the remainder of his original sentence.
II. Mootness
¶ 10 While this appeal was pending, defendant was re-granted parole. Therefore, the People argue that this appeal is moot. Because the issue is capable of repetition, yet evading review, we elect to resolve it.
Ordinarily, a court invokes its judicial power only when an actual controversy exists between adverse parties. An issue becomes moot when the relief granted by the court would not have a practical effect upon an existing controversy. When an issue is moot, a court normally refrains from addressing it.
Grossman v. Dean , 80 P.3d 952, 960 (Colo.App.2003) ; see also People v. McMurrey , 39 P.3d 1221, 1223 (Colo.App.2001).
¶ 11 However, there are exceptions for "those cases in which an otherwise moot matter is capable of repetition, yet evading review, and those cases involving matters of great public importance or an allegedly recurring constitutional violation." People v. Black, 915 P.2d 1257, 1259 n. 1 (Colo.1996) ; see also People in Interest of Ofengand, 183 P.3d 688, 691 (Colo.App.2008) (electing to resolve the issue of whether respondent validly waived her right to counsel, in part, because "the issue here will repeatedly escape *568 our review because the duration of the type of order challenged here cannot exceed six months"); Grossman, 80 P.3d at 960. "An issue may be capable of repetition while evading review even though the chance of recurrence is remote." Johnson v. Griffin , 240 P.3d 404, 406 (Colo.App.2009).
¶ 12 Here, although he was re-granted parole, defendant is serving an indeterminate period of parole. If the parole board revokes his parole in the future, the time period that would elapse before this court could review the revocation would exceed the 180-day revocation period to which defendant argues he is entitled.
¶ 13 Specifically, after the parole board revokes an individual's parole, he or she may then appeal the decision to the appellate body of the parole board. See § 17-2-103(2)(b), C.R.S.2012. If the appellate body affirms the parole board's order, the parolee may then file a motion with the district court based on an allegation that the decision results in the unlawful revocation of parole. See § 18-1-410(1)(h), C.R.S. 2012; Crim. P. 35(c)(2)(VII). It is not until the district court has ruled on the Crim. P. 35(c) motion that the parolee may appeal the decision for our review.
¶ 14 Thus, based on the length of the process that must occur before the issue is properly before this court on review, we conclude that this case involves an issue that is capable of repetition, yet evading review.
III. Parole Revocation
¶ 15 Defendant argues that the district court erred in deciding that section 17-2-103(11)(b) authorized the revocation of his parole for the remainder of his indeterminate sentence rather than a maximum of 180 days. We conclude that the parole board was authorized to revoke defendant's parole for the remainder of his sentence under section 17-22.5-403(8)(b).
A. Standard of Review and Applicable Law
¶ 16 Statutory interpretation is a question of law that we review de novo. See Dubois v. People , 211 P.3d 41, 43 (Colo.2009) ; People v. Blue , 253 P.3d 1273, 1277 (Colo.App.2011).
¶ 17 In interpreting statutes, we endeavor to do so "in strict accordance with the General Assembly's purpose and intent in enacting them." In re 2000-2001Dist. Grand Jury, 97 P.3d 921, 924 (Colo.2004) ; see also Martin v. People , 27 P.3d 846, 851 (Colo.2001). To determine that intent, we first look to the statute's plain language, see Martin , 27 P.3d at 851, giving words and phrases their "plain and ordinary meaning." People v. Dist. Court , 713 P.2d 918, 921 (Colo.1986).
¶ 18 We also read and consider the statute as a whole, construing it "to give consistent, harmonious, and sensible effect to all its parts." Id . We presume that the General Assembly intended the entire statute to be effective. See § 2-4-201(1)(b), C.R.S. 2012; Martin , 27 P.3d at 851. And we avoid constructions that would lead to an illogical or absurd result, along with those that would be at odds with the legislative scheme. See Blue , 253 P.3d at 1277 ; see also Dist. Court , 713 P.2d at 921 ("Constructions which defeat the obvious legislative intent should be avoided.").
¶ 19 "If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning." Martin , 27 P.3d at 851. But if the language is ambiguous or appears to conflict with other statutory provisions, we may consider the statute's legislative history, the object sought to be attained, and the consequences of a particular construction of the statute. See § 2-4-203(1), C.R.S. 2012; Martin , 27 P.3d at 851.
If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.
§ 2-4-205, C.R.S. 2012; see also Martin , 27 P.3d at 852.
The reasoning behind this principle of statutory construction is a simple matter of *569 logic. A general provision, by definition, covers a larger area of the law. A specific provision, on the other hand, acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance.
Martin , 27 P.3d at 852 ; accord People v. Cooper , 27 P.3d 348, 355 (Colo.2001) ("If general provisions prevailed over specific ones, then specific provisions would cease to function entirely."). "Thus, to hold that a specific provision prevails over a general one still allows for both provisions to exist." Martin , 27 P.3d at 852.
¶ 20 "In our review, we may affirm a [district] court's ruling on grounds different from those employed by that court, as long as they are supported by the record." People v. Chase , 2013 COA 27, ¶ 17, 411 P.3d 740, 2013 WL 979519 ; see also People v. Aarness , 150 P.3d 1271, 1277 (Colo.2006) ("On appeal, a party may defend the [district] court's judgment on any ground supported by the record, whether relied upon or even considered by the [district] court.").
B. Overview
¶ 21 On appeal, defendant specifically argues that section 17-2-103(11)(b)(IV) applies to his case and that it only authorized the parole board to revoke his parole for a maximum of 180 days. However, our analysis of sections 17-2-103(11)(b) and 17-22.5-403(8)(b) shows that the statutory section relied on by defendant does not apply to his parole revocation.
¶ 22 We begin by examining sections 17-22.5-403(8)(b) and 17-2-103(11)(b), in turn. As explained below, we conclude that the language of sections 17-2-103(11)(b) and 17-22.5-403(8)(b) does not clearly set forth the legislative intent concerning the length of time during which a sex offender may be required to be confined to the DOC upon revocation of his or her parole. Accordingly, we must look beyond the statutory language to determine the General Assembly's intent. See Martin , 27 P.3d at 851.
C. Section 17-22.5-403(8)(b)
¶ 23 Section 17-22.5-403(8)(b) was added along with SOLSA as part of House Bill 1156 in 1998. See Ch. 303, sec. 12, § 17-22.5-403(8)(b), 1998 Colo. Sess. Laws 1293. The statute applies to sex offenders who are subject to the provisions of SOLSA. See § 17-22.5-403(8)(b).
¶ 24 By itself, section 17-22.5-403(8)(b) is susceptible of only one interpretation. The pertinent portion of that statute provides:
Upon a determination in a parole revocation proceeding that the sex offender has violated the conditions of parole, the state board of parole shall continue the parole in effect, modify the conditions of parole ..., or revoke the parole and order the return of the sex offender to a place of confinement designated by the executive director for any period of time up to the remainder of the sex offender's natural life.
Id .
¶ 25 The generally accepted meaning of the word "shall" is that it is mandatory.[1] See Dist. Court, 713 P.2d at 921 n. 6. However, " 'no formalistic rule of grammar or word form should stand in the way of carrying out the legislative intent.' " Danielson v. Castle Meadows, Inc. , 791 P.2d 1106, 1113 (Colo.1990) (quoting 1A N. Singer, Sutherland Statutory Construction, § 25.03, 441-42 (4th ed. 1984) (footnotes omitted)). Accordingly, under certain circumstances, the word "shall" can also mean "should," "may," or "will." See Verrier v. Colo. Dep't of Corr., 77 P.3d 875, 878 (Colo.App.2003) (the word "shall" generally has a mandatory connotation but "also can mean 'should,' 'may,' or 'will' ");
*570 Black's Law Dictionary 1499 (9th ed. 2009) (one definition of the word "shall" means "[h]as a duty to" or "more broadly, is required to," which is "the mandatory sense that drafters typically intend and that courts typically uphold"; the word "shall" can also mean "[s]hould" or "[m]ay").
¶ 26 In the context of the statute here, the word "shall" has both mandatory and directory connotations. It is directory, in that the General Assembly gave the parole board three options upon determining that a sex offender has violated the conditions of his or her parole: the parole board may continue, modify, or revoke the parole. Once the parole board has decided to revoke the sex offender's parole, the word "shall" becomes mandatory with regard to the placement of the offender during the revocation period but remains directory about the length of the revocation period. While the parole board must return the sex offender to the DOC, it may do so "for any period of time up to the remainder of the sex offender's natural life." Therefore, the plain meaning of section 17-22.5-403 (8)(b) is that the General Assembly gave the parole board the discretion to revoke a sex offender's parole for the rest of his or her indeterminate sentence.
¶ 27 The legislative history supports this interpretation. During the hearing before the Senate Judiciary Committee, one of the bill's sponsors, Senator Wells, explained,
I think what's going to happen is that they will, in fact, be paroled. But instead of just like the bill we talked about two days ago in here, where the length of time of the revocation of the parole-in other words, when somebody's out on parole, the incentive for doing the right thing is the risk of the revocation. Well, if you've got someone with an eight-year sentence and you've served the whole eight years, and you're out there on the three-year mandatory parole and you've already used up a couple of that, then the longest you can have the revocation for is the balance of that parole period. All right, so the incentive goes down the longer they've already been there. The trick here is, and what we're trying to get at, is to keep this person's attention not just for the first year, the second year, or the third year that they're out on parole, but forever. Because the revocation period is not just the balance of the parole period, it's back for the rest of their life. That's the point here. It's not to keep them there in the first place. It's to have that parole and the threat of that revocation mean something.
Hearing on H.B. 1156 before the S. Judiciary Comm., 61st Gen. Assemb., 2d Sess. (Apr. 29, 1998). Senator Wells repeated that sentiment during the bill's second reading in the Senate:
The difference in this bill and what we are doing today is not just whether we have a short time of supervision or a long time of supervision. That's not the key philosophical or psychological difference. The key psychological difference is that we are sentencing this person to an indefinite sentence. And the reason why that's different is if you only got a month left of your mandatory three-year parole period and you go out and you do a parole violation, you know the worst that can happen to you is you get sent back for a month. So you might take that gamble and say, well, probably I won't get caught and if I do, who cares. And if you know that what they can send you back for that same parole violation now is not a month but for the rest of your life, you probably won't go do it and won't take that gamble.
Senate Second Reading on H.B. 1156, 61st Gen. Assemb., 2d Sess. (May 4, 1998).
¶ 28 Construing section 17-22.5-403(8)(b) along with the statutory scheme of SOLSA, as a whole, also lends weight to this interpretation. A sex offender's sentence to incarceration (with a maximum component of life) continues when he or she is released on parole and shall not be deemed discharged until he or she is discharged from parole by the parole board. See § 18-1.3-1006(1)(b), C.R.S.2012. Moreover, "[f]ollowing reincarceration, the sex offender's eligibility for parole shall be determined pursuant to section 18-1.3-1006, C.R.S. [2012]," § 17-22.5-403(8)(b), and the sex offender remains subject to SOLSA's provisions. See § 18-1.3-1010(1)(a), C.R.S.2012. If the parole board *571 did not have the authority to revoke a sex offender's parole for the remainder of his or her indeterminate sentence, it would compromise its ability to comply with SOLSA's provisions and to determine whether the offender should be re-granted parole.
D. Section 17-2-103(11)(b)
¶ 29 If section 17-22.5-403(8)(b) were the only provision applicable to this case, it would clearly follow that the parole board properly revoked defendant's parole for the remainder of his natural life. But when section 17-22.5-403(8)(b) is considered in conjunction with section 17-2-103(1 1) (b), the discretion of the parole board is less clear.
¶ 30 Section 17-2-103, C.R.S.2012, is a general provision that governs the parole revocation proceedings of all parolees, regardless of the type of conviction. It creates guidelines for conducting the proceedings, including the arrest of the parolee, the number of hearing officers, the notice to the parolee, the time frame for conducting the hearing, the burden of proof, the admission of evidence, and the appeal of the parole board's decision. See § 17-2-103(1) - (9), C.R.S.2012. Subsection (11)(b) delineates the length of time and place to which the parolee may be remanded when the parole board revokes his or her parole.
¶ 31 Section 17-2-103 was repealed and reenacted in 1977, before section 17-22.5-403(8)(b) was added. By the plain language of section 18-1.3-1010(1)(a), section 17-2-103 applies to the "arrest and revocation" of a sex offender's parole.
¶ 32 The problem with applying both provisions to a sex offender's parole revocation is that section 17-2-103(1 1)(b) increases the discretion of the parole board granted under section 17-22.5-403 (8)(b) as to the placement of the offender during the revocation period and limits its discretion regarding the length of the revocation.
¶ 33 Under section 17-22.5-403(8)(b), the parole board must order the return of the sex offender to a place of confinement designated by the executive director regardless of the circumstances underlying the parole revocation. In contrast, depending on the reason for the revocation, section 17-2-103(11)(b) may allow or require the parole board to order the offender to serve the revocation period in community corrections, county jail, or a preparole release and revocation facility. See § 17-2-103(11)(b)(II)(B)(D), C.R.S.2012 (community corrections, county jail, or a preparole release and revocation facility); § 17-2-103(11)(b)(III), C.R.S.2012 (preparole release and revocation facility); § 17-2-103(11)(b) (III.5), C.R.S.2012 (preparole release and revocation facility); § 17-2-103(11)(b)(IV)(C)(D), C.R.S.2012 (community corrections or a preparole release and revocation facility).
¶ 34 Next, under section 17-22.5-403(8)(b), the parole board always has the discretion to revoke a sex offender's parole for any period of time up to his or her natural life. However, depending on the reason for the revocation, section 17-2-103(11)(b) may limit the parole board's discretion to revoke an offender's parole to a maximum of ninety or 180 days. See § 17-2-103(11)(b)(II)(B)-(D) (ninety-day or 180-day maximum); § 17-2-103(11)(b)(III) (180-day maximum); § 17-2-103(11)(b) (III.5) (180-day maximum); § 17-2-103(11)(b)(IV)(A)(D), C.R.S. 2012 (ninety-day or 180-day maximum).
E. Section 17-2.5-403(8)(b) Prevails
¶ 35 As shown above, under certain circumstances, section 17-2-103(11)(b) limits the parole board's discretion to revoke a sex offender's parole for the remainder of his or her natural life and increases its discretion to place a sex offender in a facility other than the DOC. We therefore conclude that sections 17-2-103(1 1)(b) and 17-22.5-403(8)(b) conflict.
¶ 36 Additionally, we conclude that the conflict cannot be reconciled. First, a revocation of parole under section 17-22.5-403(8)(b)always requires that the sex offender be returned to the DOC. In contrast, section 17-2-103(11)(b) only requires the offender's return to the DOC under certain circumstances. See § 17-2-103(11)(b)(I), (VI), C.R.S.2012. Second, whereas section 17-22.5-403(8)(b)always gives the parole board the discretion to return the sex offender to *572 the DOC for the remainder of his or her natural life, section 17-2-103(11)(b) only allows the parole board to direct confinement for a parole violation under limited conditions. See § 17-2-103(11)(b)(I), (II)(A), (VI), C.R.S.2012.
¶ 37 If the provisions of section 17-2-103(11)(b) were construed as controlling, such a construction would undermine the purpose of enacting section 17-22.5-403(8)(b). As the legislative history reveals, the purpose of granting the parole board the power to revoke a sex offender's parole for the remainder of his or her natural life is to make violations of parole a more weighty matter. "While by no means conclusive, the testimony of a bill's sponsor concerning its purpose and anticipated effect can be powerful evidence of legislative intent." Vensor v. People, 151 P.3d 1274, 1279 (Colo.2007). That legislative intent is consistent with the language of section 17-22.5-403(8)(b). Thus, section 17-2 -103(11)(b) and section 17-22.5-403(8)(b) cannot both be given effect when a parole revocation proceeding involves a sex offender.
¶ 38 Because section 17-22.5-403(8)(b) specifically addresses the length of the parole revocation for sex offenders and was enacted after section 17-2-103(11)(b), we construe that provision as the more specific provision. As the more specific and more recently enacted provision, section 17-22.5-403(8)(b) prevails over the general provisions found in section 17-2-103(11)(b), which are applicable to all parole revocations. See § 2-4-205. Accordingly, section 17-22.5-403(8)(b) is an exception to the general parole revocation scheme applicable to all offenders. The exception dictates that a sex offender is subject to having his or her parole revoked for the remainder of his or her indeterminate sentence.
¶ 39 Consequently, section 17-22.5-403(8)(b) applies to the revocation of parole for all sex offenders. But section 17-2-103 (11)(b) will continue to apply to non-sex offenders. Also, the remaining portions of section 17-2-103 will continue to apply to a sex offender's parole revocation proceeding. Because the specific and more recent provision, section 17-22.5-403(8)(b), acts as an exception to the general provision, section 17-2-103(1 1)(b), our conclusion gives full and sensible effect to the statutory scheme.
F. Application
¶ 40 Defendant is a sex offender under SOLSA subject to section 17-22.5-403(8)(b) because he committed the offense in 2003 (after the effective date of SOLSA), and his conviction of sexual assault on a child is a sex offense under SOLSA. See §§ 18-1.3-1003(4), (5) (a)(IV), 18-1.3-1012, C.R.S.2012.
¶ 41 Because defendant is subject to section 17-22.5-403(8)(b), the parole board properly revoked his parole for the remainder of his indeterminate sentence. Therefore, the district court did not err in denying defendant's Crim. P. 35(c) motion. See Chase , ¶ 17.
¶ 42 The order is affirmed.
JUDGE TERRY and JUDGE NAVARRO concur.

We note that the General Assembly recently enacted legislation amending section 2-4-401, C.R.S.2012, by adding definitions of the words "must" and "shall," that apply to every statute, unless the context otherwise requires. See Ch. 8, sec. 2, § 2-4-401(6.5)(a), 2013 Colo. Sess. Laws 21 (the word "must" in a statute "means that a person or thing is required to meet a condition for a consequence to apply. 'Must' does not mean that a person has a duty."); Ch. 8, sec. 2, § 2-4-401(13.7) (a), 2013 Colo. Sess. Laws 21 (the word "shall" in a statute "means that a person has a duty."). However, this new legislation is not applicable here, because it does not apply to any statutes enacted before August 7, 2013. See Ch. 8, sec. 2, §§ 2-4-401(6.5)(b)(I), (13.7) (b)(I) 2013 Colo. Sess. Laws 21.