2014 COA 61

**Paul J. ZUEGER; American Design Limited, a Colorado corporation; Red Lodge Publishers, Inc., a Colorado corporation; and Singleton–Biss Museum of Fine Art, Inc., a New Mexico non-profit corporation, Plaintiffs–Appellees and Cross–Appellants,**

v.

**Lou Lou GOSS, individually and d/b/a The Estate of Earl V. Biss, Jr., Defendant–Appellant and Cross–Appellee.**

**Court of Appeals No. 12CA2000**

Colorado Court of Appeals,
Div. II.

Announced May 8, 2014

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2013.

City and County of Denver District Court No. 10CV5449, Honorable Herbert L. Stern, III, Judge

G.W. Merrick & Associates, LLC, Glenn W. Merrick, Joseph T. Bernstein, Greenwood Village, Colorado, for Plaintiffs–Appellees and Cross–Appellants

John H. Case, Aspen, Colorado, for Defendant–Appellant and Cross–Appellee

Opinion by JUDGE RICHMAN

¶ 1 Defendant, Lou Lou Goss, individually and d/b/a The Estate of Earl V. Biss, Jr., appeals the judgment entered on jury verdicts in favor of plaintiffs, Paul J. Zueger, American Design Limited, Red Lodge Publishers, Inc., and Singleton–Biss Museum of Fine Art, Inc., on their claims for intentional interference with prospective business advantage and defamation. Plaintiffs cross-appeal the district court's dismissal of their claims for outrageous conduct and civil extortion. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

¶ 2 Goss is the widow and personal representative of the estate of Earl Biss, a renowned Native American artist who died in 1998. Plaintiff Zueger is an art dealer, and the other plaintiffs are entities through which he purchases, sells, publishes, promotes, preserves, and exhibits artwork by Biss and other artists. Goss and Zueger had a dispute stemming from Goss's contention that plaintiffs were making and selling unauthorized reproductions of Biss's artwork, prompting Goss to make disparaging statements about plaintiffs on the Internet. Plaintiffs filed suit against Goss, asserting several claims for relief, only two of which went to the jury—intentional interference with prospective business advantage and defamation. The jury found in plaintiffs' favor on both claims, awarding $86,601 in damages on the interference claim and $10,000 in damages on the defamation claim. At the close of evidence, the trial court dismissed two other claims asserted by plaintiffs—outrageous conduct and civil extortion.

## II. Issues on Appeal

¶ 3 Goss argues that the trial court erred by (1) entering as a discovery sanction an order precluding Biss's former attorney from testifying; (2) concluding that one of Goss's statements about plaintiffs was defamatory per se and so instructing the jury; (3) concluding that plaintiffs were not public figures and that Goss's online statements did not relate to a matter of public concern; and (4) awarding damages that were uncertain.

¶ 4 Plaintiffs argue on cross-appeal that the trial court erred by dismissing their claims for outrageous conduct and extortion.

### A. Discovery Sanction

¶ 5 Goss concedes that her trial counsel failed to submit her list of trial witnesses by the C.R.C.P. 16(f)(2)(B)deadline. A week after the missed deadline, plaintiffs moved to bar Goss from calling any undisclosed witnesses at trial. A week later, Goss filed her witness list, which included Biss's former attorney.

¶ 6 The court postponed ruling on plaintiffs' motion until the fourth day of trial, when it prohibited only the former attorney from testifying. In support of its ruling, the court determined that the delay was not harmless as to plaintiffs, who stated they were not prepared to respond to the former attorney's testimony, and that Goss had a history of failing to comply with procedural rules. It also noted that the testimony raised potential attorney-client privilege waiver issues, that relevant documents from the former attorney's file may not have been disclosed to plaintiffs, and that to the extent either side would suffer prejudice, it should fall on Goss.

¶ 7 Goss contends that the court erred by precluding the former attorney from testifying. We are not persuaded.

¶ 8 We review the trial court's imposition of a discovery sanction for an abuse of discretion. *See Pinkstaff v. Black & Decker (U.S.) Inc.,* 211 P.3d 698, 702 (Colo.2009). "A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair." *Id.*

¶ 9 The purpose of the disclosure requirements of C.R.C.P. 16 "is to provide parties with adequate time to prepare by obtaining relevant evidence to prevent trial by ambush and surprise." *Keith v. Valdez,* 934 P.2d 897, 899 (Colo.App.1997). Moreover, "under C.R.C.P. 37(c), a trial court has a duty to sanction a party for failure to comply with certain discovery deadlines by precluding evidence or witnesses, *unless* the party's failure to comply is *either* substantially justified *or* harmless." *Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973, 975 (Colo. 1999) (emphasis in original); *see also City of Aurora in Interest of Util. Enter. v. Colo. State Eng'r,* 105 P.3d 595, 610 (Colo.2005) ("A party offering late-disclosed evidence bears the burden of showing that the failure to disclose was harmless.").

¶ 10 The following factors may be relevant to determining whether a late disclosure was substantially justified or harmless:

(1) the importance of the witness's testimony;

(2) the explanation of the party for its failure to comply with the required disclosure;

(3) the potential prejudice or surprise to the party against whom the testimony is offered that would arise from allowing the testimony;

(4) the availability of a continuance to cure such prejudice;

(5) the extent to which introducing such evidence would disrupt trial; and

(6) the non-disclosing party's bad faith or willfulness.

*Todd,* 980 P.2d at 978.

¶ 11 Here, Goss makes no showing, nor did she at trial, as to the importance of the former attorney's testimony. Her counsel conceded that the failure to submit the witness list on time was not substantially justified by acknowledging to the trial court that it "fell through the cracks." Plaintiffs stated that they were unprepared to respond to the former attorney's testimony and that they were not given copies of some of the documents about which he would likely testify. Goss did not request a continuance, and because the trial was already in its fourth day, this is not a case where one was feasible. In addition, permitting the testimony was likely to disrupt the trial, raising attorney-client privilege waiver issues and possibly allowing "the side show [to take] over the circus," as the court noted. Further, the court noted that Goss had a history of not complying with discovery procedures. Under these circumstances, we are not persuaded that the sanction of witness preclusion was disproportionate, and therefore we discern no abuse of the trial court's discretion.

### B. Defamation Per Se

¶ 12 Over Goss's objection, the trial court determined that fifteen "complained of" statements she allegedly made in reference to plaintiffs were defamatory per se as a matter of law, and so instructed the jury in Instruction No. 8. All fifteen statements were listed in Instruction No. 9, including the following: "The company is comparable to the 'Man in Black' for Mozart." The jury was instructed to determine only if Goss published the statements and, if so, whether the statements caused plaintiffs actual damages, subject to the affirmative defense of "absolute truth." Goss contends that the above statement is not defamatory per se and that the trial court erred in so instructing the jury. We agree.

### 1. Standard of Review and Applicable Law

¶ 13 Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him or her to incur injury or damage. *Keohane v. Stewart,* 882 P.2d 1293, 1297 (Colo.1994). "[D]efamatory statements are so egregious and intolerable because the statement destroys an individual's reputation: a characteristic which cannot be bought, and one that, once lost, is extremely difficult to restore." *Id.* at 1298.

¶ 14 Whether a statement is defamatory is a question of law we review de novo. *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo.App. 2004); *see also NBC Subsidiary (KCNC–TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 11 (Colo.1994).

¶ 15 Whether a statement is one of fact or opinion does not necessarily determine whether it is defamatory. *See NBC Subsidiary (KCNC–TV), Inc.*, 879 P.2d at 9–10; *see also Burns v. McGraw–Hill Broad. Co., Inc.*, 659 P.2d 1351, 1360 (Colo.1983) ("Even if the statement could be characterized as an opinion, it will support a defamation action if the language is defamatory and the underlying defamatory facts which provide a basis for the opinion are false and are not disclosed in the context of the broadcast."); *Sall v. Barber*, 782 P.2d 1216, 1218 (Colo.App.1989) ("Because pure opinion by its nature cannot be proven false and, therefore, cannot be defamatory, it is equally protected regardless of whether the addressee is public or private or whether the issue is of public or only private concern.").

¶ 16 Rather, to determine whether a statement is defamatory, we employ a two-part test: "[A] court must determine whether the statement contains or implies a verifiable fact about the plaintiff and second, whether the statement reasonably is susceptible to being understood as an assertion of actual fact." *NBC Subsidiary (KCNC–TV), Inc.*, 879 P.2d at 10 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)); *see also Keohane v. Wilkerson*, 859 P.2d 291, 296 (Colo. App.1993), *aff'd sub nom. Keohane v. Stewart*, 882 P.2d 1293. We also consider factors such as the phrasing of the statement, the context in which it appears, and the circumstances surrounding its publication. *Keohane*, 859 P.2d at 296. A reviewing court must review the record de novo to ensure that the trial court's judgment does not constitute a forbidden intrusion on the field of free expression. *Sky Fun 1, Inc. v. Schuttloffel*, 8 P.3d 570, 574 (Colo.App.2000) (citing *NBC Subsidiary (KCNC–TV), Inc.*, 879 P.2d

6), *aff'd in relevant part*, 27 P.3d 361 (Colo. 2001).

### 2. Analysis

¶ 17 We do not see how the "Man in Black" statement contains or implies a verifiable assertion of fact, or how it could reasonably be understood as stating an actual fact about plaintiffs.

¶ 18 A reader would understand the statement only if he or she was familiar with the literary character referenced in it. At trial, plaintiffs had a witness explain to the jury that "Man in Black" was a reference to the "slimy," mysterious character who kills Mozart in Aleksandr Pushkin's play, *Mozart and Salieri*. Plaintiffs suggest that the audience to whom Goss's statements were addressed was a sophisticated group of art connoisseurs who would recognize the literary reference. However, even to the extent that a person reading the statement online would understand its literary meaning, as plaintiffs urge, to say that plaintiffs are "comparable" to a literary character cannot reasonably be understood as an assertion that they were responsible for killing Biss. Thus, the statement lacks an underlying, verifiable factual assertion needed to support a defamation claim.

¶ 19 More likely, the reasonable reader would understand simply that the maker of the statement had an unfavorable opinion of plaintiffs. However, an expression of belief or opinion that does not imply the existence of a false and defamatory fact is constitutionally privileged. *NBC Subsidiary (KCNC–TV), Inc.*, 879 P.2d at 11; *see also Keohane*, 882 P.2d at 1300 (noting that the Supreme Court has deemed "'imaginative expression'" and "'rhetorical hyperbole'" worthy of constitutional protection). None of the circumstances surrounding the publication of this statement suggests that it was intended as an assertion of fact rather than an expression of a subjective judgment. *See NBC Subsidiary (KCNC–TV), Inc.*, 879 P.2d at 12. Thus, we conclude that the statement is not defamatory per se.[1]

1. Because the statement lacks the requisite assertion of fact, we need not address plaintiffs' contention that the statement falls within two of the four traditional categories of slander per se. *See*

¶ 20 This conclusion, however, does not end our inquiry, for the statement was but one of fifteen submitted to the jury. On the verdict form, the jury was instructed that it must find in plaintiffs' favor on their defamation claim if it found that Goss published "any" of the fifteen listed statements. The jury filled out a special verdict form finding that Goss defamed plaintiffs by "publish[ing] any of the defamatory statements complained of in Instruction 9," but it did not indicate which of the fifteen statements it relied upon.

¶ 21 Plaintiffs contend that the defamation verdict may be affirmed on the basis of the other fourteen statements which were submitted to the jury and which the trial court found to be defamatory per se. Goss does not challenge the defamatory nature of the other statements in this appeal.

¶ 22 Colorado courts have not addressed the issue of whether a general jury verdict based on more than one alleged defamatory statement may be upheld so long as one of the statements is defamatory, even if others are not. However, courts from several other jurisdictions, federal and state, have concluded that a defamation general verdict based on multiple statements, one or more of which is not actionable as a matter of law, cannot stand. *See McFarland v. Boisseau*, 365 S.W.3d 449, 454 (Tex.App.2011) (reversing judgment where it was "impossible to ascertain whether the jury determined damages based on one, some, or all of the statements identified as defamatory per se"); *see also Levinsky's, Inc. v. Wal–Mart Stores, Inc.*, 127 F.3d 122, 134 (1st Cir.1997) (reversing judgment where court could not "identify which of the two [defamation] claims—one proper and one improper—the jury relied upon to reach the general verdict"); *Avins v. White*, 627 F.2d 637, 646 (3d Cir.1980) (reversing judgment where it was "impossible to determine if the jury based its verdict on all three allegedly defamatory statements or whether the verdict was based on only one or two of the incidents"); *West v. Media Gen. Operations, Inc.*, 120 Fed.Appx. 601 (6th Cir. 2005) (unpublished opinion).

*Gordon v. Boyles,* 99 P.3d 75, 79 (Colo.App. 2004).

¶ 23 We find the reasoning of these cases to be persuasive. A verdict possibly based on a statement that is not defamatory per se cannot stand. *See Levinsky's, Inc.*, 127 F.3d at 130. Because we cannot discern from the record which of the statements the jury relied upon in finding liability, and because it may have relied on the "Man in Black" statement, a new trial on the defamation claim is necessary. The better practice would have been to include a special verdict form requiring the jury to indicate which of the statements it relied upon in reaching its verdict.

¶ 24 Therefore, we must reverse the defamation verdict and remand for a new trial on this claim. We make no determination as to whether the other statements included in Instruction No. 9 are actionable.

### C. Public Figures

¶ 25 Goss contends that the court erred by concluding that plaintiffs were not public figures and that the statements by Goss were not matters of "public concern" for the purpose of plaintiffs' defamation claim. Had the court concluded plaintiffs were public figures, or the statements matters of public concern, plaintiffs would have been required to prove by clear and convincing evidence that Goss made the statements with knowledge that they were false or with reckless disregard of whether they were false or not. *See Burns*, 659 P.2d at 1361; *see also* CJI–Civ. 4th 22:1 (2013). We address this contention because the issue is likely to arise on retrial.

¶ 26 We review de novo whether an individual is a public figure and whether a matter is of public concern for defamation purposes. *McIntyre v. Jones*, 194 P.3d 519, 525–27 (Colo.App.2008).

¶ 27 In determining whether an individual is a public figure, we examine the nature and extent of his or her participation in the controversy giving rise to the alleged defamation. *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1107 (Colo. 1982). A person may be a public figure for a limited purpose; this determination hinges on two questions: "the threshold question of

whether the defamatory statement involves a matter of public concern and, more importantly, whether the level of plaintiff's participation in the controversy invites scrutiny." *Lewis v. McGraw–Hill Broad. Co., Inc.*, 832 P.2d 1118, 1122 (Colo.App.1992). "[A] matter of public concern is one that affects a broad segment of the community or affects a community in a manner similar to that of a governmental entity." *McIntyre*, 194 P.3d at 526. However, "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). In addition, "one does not become a public figure merely by availing himself of the marketplace." *Diversified Mgmt.*, 653 P.2d at 1108.

¶ 28 Here, we conclude that Goss's statements about plaintiffs' business activities do not involve a matter of public concern, nor do her allegations make plaintiffs public figures. Rather, this is a private business dispute between private parties. There is no evidence that plaintiffs voluntarily injected themselves into this controversy; instead, it was created by Goss's online publication of disparaging statements about them. Nor is there any evidence to suggest that anyone other than Goss had been directly affected by plaintiffs' ongoing business activities or that any government entities had become involved. *Cf. Lawson v. Stow*, 2014 COA 26, ¶ 25, 327 P.3d 340 (allegation of criminal conduct "communicated to a law enforcement officer" may be a matter of public concern); *Smiley's Too, Inc. v. Denver Post Corp.*, 935 P.2d 39, 42 (Colo.App.1996) (allegedly defamatory article about dry cleaning business "affected many consumers and involved a consumer affairs agency, [and therefore] it presented an issue about which the public had a legitimate need for information").

¶ 29 On retrial, based on the record in this case, plaintiffs should not be deemed public figures, nor should the statements be treated as matters of public concern.

## D. Damages

¶ 30 Goss contends that the evidence of plaintiffs' damages was too speculative as a matter of law. Because we are reversing the defamation judgment, we address this argument with respect to the damages awarded on the interference claim only.

¶ 31 "The amount of damages to be awarded is within the sole province of the jury and may not be disturbed unless it is completely unsupported by the record." *Jones v. Cruzan*, 33 P.3d 1262, 1265 (Colo. App.2001). Thus, if there is no competent evidence to support a damage award, it is clearly erroneous. *Palmer v. Diaz*, 214 P.3d 546, 552 (Colo.App.2009). Damages may not be based on mere speculation or conjecture. *Sonoco Prods. Co. v. Johnson*, 23 P.3d 1287, 1289 (Colo.App.2001).

¶ 32 Here, through their expert witnesses, plaintiffs presented ample testimony to support their contention that sales by plaintiffs of Biss's work declined as a result of Goss disparaging them online. Evidence of plaintiffs' average annual sales of Biss's work before the defamation compared to sales after the defamation could have supported an award of one million dollars or more, according to one expert. Although the jury awarded plaintiffs substantially less in damages, we decline to infer that the amount awarded was clearly erroneous. *See Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1382 (Colo.1993) ("In addressing the need for certainty and the practical difficulties of proving future losses with precision, we have struck a balance which allows a plaintiff a certain amount of leeway in proving the amount of the loss in situations where circumstances make proving the exact amount difficult or impossible.").

¶ 33 Goss's reliance on *Runiks v. Peterson*, 155 Colo. 44, 392 P.2d 590 (1964), is misplaced. There, the plaintiff purchased a business from the defendant, and the only evidence of damages caused by the defendant's breach of a noncompetition agreement was a comparison between the amount of business done at the store for separate six-month periods when it was owned by the defendant and when it was owned by the

plaintiff. *Id.* at 46, 392 P.2d at 591. The damages the plaintiff sought to establish were not only uncertain in amount, they were also not shown to be "traceable to and ... the direct result of the wrong sought to be addressed." *Id.* at 45, 392 P.2d at 590. Thus, the court reversed the damages award.

¶ 34 By contrast, in this case, Goss challenges only the amount of damages, and we conclude that there was a sufficient evidentiary basis for the amount awarded by the jury.

### E. Dismissed Claims

¶ 35 Plaintiffs contend on cross-appeal that the trial court erred by dismissing their claims for outrageous conduct and extortion at the close of evidence. We disagree.

¶ 36 The trial court's dismissal of a claim at the close of evidence in a jury trial is equivalent to a directed verdict, which we review de novo. *See Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.,* 186 P.3d 80, 82–83 (Colo.App.2003). We must determine whether there is evidence of sufficient probative force to support the trial court's ruling, considering all of the facts in the light most favorable to the nonmoving party. *Id.*; *see also Fair v. Red Lion Inn,* 943 P.2d 431, 436 (Colo.1997).

### 1. Outrageous Conduct

■ ¶ 37 "The elements of outrageous conduct are that (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Green v. Qwest Servs. Corp.,* 155 P.3d 383, 385 (Colo.App.2006). "Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 883 (Colo.1994); *see also Bauer v. Sw. Denver Mental Health Ctr., Inc.,* 701 P.2d 114, 118 (Colo.App.1985) ("If, after viewing the evidence in the light

most favorable to plaintiff, the court determines that no reasonable person could conclude that the defendant's conduct was outrageous, summary judgment is appropriate.").

■ ¶ 38 Here, viewing all of the evidence in the light most favorable to plaintiffs, we cannot conclude that Goss's conduct was sufficiently egregious to establish that it was extreme and outrageous. Neither her unfavorable online publications about plaintiffs nor her statements made directly to them went "beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." *Green,* 155 P.3d at 387; *see also Pearson v. Kancilia,* 70 P.3d 594, 597 (Colo.App.2003) ("Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient [to establish outrageous conduct]."). This is not a case where an uneven power relationship between defendant and plaintiffs weighs in plaintiffs' favor. *See Pearson,* 70 P.3d at 598 (concluding that there was evidence from which a jury could reasonably infer that the defendant exploited both an employer-employee relationship and a doctor-patient relationship). Nor did plaintiffs present evidence that Goss, through threats or other conduct, caused them to believe they had no choice in the matter, or even that she had succeeded in overcoming their reluctance to do anything they did not want to do.[2] *Cf. id.* (evidence supported the inference that defendant's conduct caused victim to believe she would lose her job if she did not have sex with him).

¶ 39 Thus, the trial court did not err by dismissing the outrageous conduct claim.

### 2. Extortion

¶ 40 Colorado does not have a civil extortion statute. Plaintiffs cite no authority, and we are not aware of any, that expressly allows such a claim. *Cf. A-1 Auto Repair & Detail, Inc. v. Bilunas–Hardy,* 93 P.3d 598, 604 (Colo.App.2004) (noting that statutory civil remedies are available for the crime of theft); *see also Huffman v. Westmoreland Coal Co.,* 205 P.3d 501, 509 (Colo.App.2009) ("Section 18–4–405, C.R.S.2008, provides in-

---

**2.** To the extent that plaintiffs allege that Goss was successful in causing them financial harm,

plaintiffs recovered such damages by prevailing on their interference claim.

dependent civil remedies to the owner of stolen property and requires that all property obtained by theft, robbery, or burglary be returned to the owner.").

¶ 41 Assuming without deciding that Colorado recognizes such a claim for relief and that it is analogous to criminal extortion, as pertinent here, we conclude that plaintiffs would have had to make a prima facie showing that Goss, without legal authority, threatened to cause economic injury to them, with the intent to induce them, against their will, to do an act. *See* § 18–3–207(1), C.R.S.2013; *People v. Campbell,* 174 P.3d 860, 865–66 (Colo.App.2007); *see also* CJI–Crim. 10:17 (1983).

¶ 42 At trial, plaintiffs stated that the primary basis for damages on the extortion claim was Exhibit 14, an agreement signed by Goss, pursuant to which Zueger agreed to pay her $19,000 as fees and royalties for the use of some of Biss's artwork. By its terms, the agreement "is not designed to be binding or any type of admission of liability by either [Goss] or [plaintiffs]." The agreement does not obligate Goss to withdraw or not pursue any claims she might have against plaintiffs or to refrain from making disparaging statements about plaintiffs. Nor does the agreement indicate that plaintiffs entered into it "against their will." Although Zueger testified that "it was cheaper to pay her than to go to court on it," that may be true of many legal settlements. Indeed, Exhibit 14 states that it is "an outline of our settlement discussions." Settlement implies a compromise; it does not establish conduct against one's will. Indeed, Zueger's testimony describes the bargaining that led to the payments reflected in Exhibit 14. Exhibit 14 and the testimony concerning it are insufficient to establish the elements of extortion.

¶ 43 Thus, we conclude that the trial court did not err by dismissing the civil extortion claim.

### III. Conclusion

¶ 44 The judgment is affirmed as to plaintiffs' claim for intentional interference and the dismissal of their claims for outrageous conduct and extortion. The judgment is reversed as to the defamation claim and remanded for further proceedings on that claim only.

JUDGE CASEBOLT and JUDGE ASHBY concur.