The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 10, 2019

## 2019COA152

### No. 16CA0048, *People v. Knox* — Crimes — Attempt to Influence a Public Servant — Criminal Extortion

A division of the court of appeals considers whether police
officers are "public servants" under section 18-8-306, C.R.S. 2019.
The division concludes that the statute is ambiguous; thus, it relies
on the statutory scheme to determine that the General Assembly
intended to include police officers in the broader category of public
servants for purposes of section 18-8-306.

The division further holds that a defendant may be charged
multiple times for distinct offenses under section 18-8-306 when
the discrete offenses were separated in time and location and
comprised separate volitional departures.  *See Quintano v. People*,
105 P.3d 585, 592 (Colo. 2005).

Finally, the division concludes that a threat of litigation to cause economic hardship does not constitute criminal extortion because it is not an "unlawful act," which is necessary to prove criminal extortion under section 18-3-207(1)(a), (b)(1), C.R.S. 2019.

Accordingly, the division affirms the judgment in part and vacates the criminal extortion conviction.

Court of Appeals No. 16CA0048
Jefferson County District Court No. 14CR3169
Honorable Todd L. Vriesman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ashley Rae Ruth Knox,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART
AND VACATED IN PART

Division I
Opinion by JUDGE TAUBMAN
Freyre and Pawar, JJ., concur

Announced October 10, 2019

Philip J. Weiser, Attorney General, Kevin E. McReynolds, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Ashley Rae Ruth Knox, appeals the judgment of conviction entered on a jury verdict finding her guilty of criminal extortion and three counts of attempt to influence a public servant.[1] Knox raises two contentions on appeal: first, the district court erred in concluding that police officers are public servants under section 18-8-306, C.R.S. 2019; and second, her threat of litigation absent settlement of a potential personal injury claim did not constitute criminal extortion under section 18-3-207(1)(a), (b)(I), C.R.S. 2019. Because we disagree with her first contention, we affirm her convictions for attempt to influence a public servant.  However, because we agree with her second contention, we vacate her conviction for criminal extortion.

## I.  Background

¶ 2     On November 26, 2014, Amber Diedrichs-Giffin was turning left in her car when she heard a "bang" as Knox forcefully placed her hands on the hood of the car.  When Diedrichs-Giffin asked if Knox was okay, Knox responded that her "leg kind of hurts."

---

[1] The jury also found her guilty of two counts of false reporting; however, Knox does not appeal those convictions.

Diedrichs-Giffin provided her insurance and contact information; however, Knox declined to contact law enforcement officials and asked for "weed" or money, stating, "We could settle this now." Knox walked away — seemingly uninjured — after Diedrichs-Giffin directed Knox to contact Diedrichs-Giffin's insurance company.

¶ 3　　Shortly afterward, Diedrichs-Giffin called 911 to report the accident, expressing her uncertainty about who was at fault. The dispatcher told her that, without an injury, she did not need to file a report; but if Knox contacted law enforcement officials later, they could refer to the recording of Diedrichs-Giffin's call.

¶ 4　　Later the same day, Knox sent Diedrichs-Giffin a series of text messages asking to settle matters outside of court. The particular text message underlying the eventual criminal extortion charge and conviction stated:

> Hey amber, this is Ashley the young lady, u hit..i have a little amount of time if i want to pursue, court action...im already on pain management and am going through hard times like everyone..im sure..id rather u help me out we agree to a one time feesable amount. We can even sign something if u want..to keep out of a long court proceeding going back to court over several months, insurance goin up, and my medical bills, since im in and out of hospital already[.] Let me know, if that works

for you, or u would rather draw it out in court. Thanks[.]

Diedrichs-Giffin did not respond to the message and testified that she perceived it as an attempt to "make a one-time deal with me so that way we didn't have to pursue it in court."

¶ 5    Six days later, Knox walked to an area near where the incident occurred and called 911, reporting that she had just been injured in a hit-and-run accident. Among other things, she claimed that the driver had refused to wait for police and she could not walk home because her leg and hip hurt.

¶ 6    Arvada police officers Dustin LeDoux and Donald Smith responded to Knox's report. Knox described Diedrichs-Giffin and her vehicle to Officer Smith and provided him with her license plate number. During the subsequent ambulance ride to the hospital, she provided a more detailed account to Officer LeDoux.

¶ 7    Officer LeDoux tracked down Diedrichs-Giffin and learned that the incident had, in fact, taken place six days earlier. He also procured a copy of the text Knox had sent to Diedrichs-Giffin the day of the incident. Officer LeDoux interviewed Knox at the hospital after hearing Diedrichs-Giffin's account. She initially maintained

her version of events, but when confronted with the text message, she admitted that the incident had occurred six days earlier. She explained that she had lied about the timing because she feared not receiving medical treatment otherwise.

¶ 8 The district attorney charged Knox with criminal extortion, false reporting, and three counts of attempt to influence a public servant. The jury rejected her arguments that she was guilty only of false reporting and that the prosecution had failed to prove that she staged the accident or faked her injuries. She was convicted of all counts, and this appeal followed.

## II. Sufficiency of the Evidence

¶ 9 Knox contends that the prosecution failed to prove beyond a reasonable doubt that she committed three offenses of attempt to influence a public servant; thus, she argues that we must vacate her convictions because the evidence was insufficient to establish her guilt. Before determining whether there was sufficient evidence to convict Knox of attempting to influence a public servant, we must address two preliminary questions — (1) whether police officers are public servants and (2) whether Knox could be convicted of three offenses or only one offense.

## A. Attempt to Influence Public Servants

¶ 10    Knox argues that the district court erred in concluding that police officers are public servants for purposes of attempting to influence a public servant under section 18-8-306. We disagree.

### 1. Standard of Review

¶ 11    Sufficiency of the evidence claims may be raised for the first time on appeal and are not subject to plain error review. *McCoy v. People*, 2019 COA 44, ¶ 19, 442 P.3d 379, 385.

¶ 12    We review questions of statutory interpretation de novo. *People v. Sena*, 2016 COA 161, ¶ 10, 395 P.3d 1148, 1150.

¶ 13    When interpreting a statute, we look first to the language of the statute, attributing plain and ordinary meanings to all words and phrases. *McCoy*, ¶ 37, 442 P.3d at 389. We read the statute in context with its broader statutory scheme, "giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.* at ¶ 38, 442 P.3d at 389. If the statutory language is clear and unambiguous, we apply the provision as written. *Id.* If, on the other hand, we conclude that the statute is reasonably susceptible of multiple

interpretations, we turn to other interpretive methods to ascertain the legislature's intent and resolve the ambiguity. *Id.* In so doing, we may refer to canons of statutory construction, legislative history, and the statute's purpose. *Id.*

### 2. Applicable Law and Analysis

¶ 14 In *Sena,* a division of our court concluded that, by its plain language, "police officers are public servants as contemplated in section 18-8-306." *Sena,* ¶ 15, 395 P.3d at 1151. Knox contends *Sena* was wrongly decided. We agree with the holding in *Sena.* However, although we agree with the *Sena* division's conclusion that a police officer is a public servant, we reach that conclusion after determining that the statute is ambiguous, requiring additional interpretation.

¶ 15 On the one hand, the reading of the statute and the accompanying statutory scheme relied on by Knox suggests that the legislature intended to distinguish police officers from public servants by enacting separate statutes to address conduct against them in certain circumstances. On the other hand, the *Sena* division concluded, based on the plain language of the statute, that police officers are included in the broad definition of public

servants. Because section 18-8-306 is amenable to two reasonable interpretations, we conclude it is ambiguous.

¶ 16    The statute governing the crime of attempt to influence a public servant provides:

> Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

§ 18-8-306.

¶ 17    Section 18-1-901(3)(o), C.R.S. 2019, defines "public servant," generally, as "any officer or employee of government, whether elected or appointed, and any person participating as an advisor, consultant, process server, or otherwise in performing a governmental function, but the term does not include witnesses." Section 18-8-101(3), C.R.S. 2019, explicitly cross-references and adopts section 18-1-901's general definition; however, section 18-8-301(4), C.R.S. 2019, expands on the definition's scope, as relevant here for purposes of section 18-8-306, to include "persons who presently occupy the position of a public servant as defined in

7

section 18-8-101(3) or have been elected, appointed, or designated to become a public servant although not yet occupying that position."

¶ 18     Section 18-1-901(3)(o)'s definition of "public servant" does not use the term "peace officer." Title 16, on the other hand, includes police and law enforcement officers in the definition of "peace officer." § 16-2.5-101, C.R.S. 2019; § 16-2.5-105, C.R.S. 2019; *see also* § 18-8-101(2.5) ("'Peace officer' has the same meaning as described in section 16-2.5-101, C.R.S.").

¶ 19     Some statutes distinguish offenses against a public servant from offenses against a peace officer. Based on these statutes, Knox contends police officers are not public servants. Specifically, she notes that two sets of statutes create separate offenses for conduct against police officers and public servants.

¶ 20     First, section 18-8-102, C.R.S. 2019, states that a person commits obstruction — a class 3 misdemeanor[2] — of government operations by intentionally obstructing, impairing, or hindering the

_____

[2] A class 3 misdemeanor is punishable by up to six months imprisonment, a $750 fine, or both. § 18-1.3-501(1)(a), C.R.S. 2019.

performance of a governmental function by a public servant. Meanwhile, section 18-8-104, C.R.S. 2019, states that a person obstructs a peace officer — a class 2 misdemeanor[3] — when "such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority."

¶ 21    Similarly, the General Assembly established separate offenses for impersonating a peace officer, section 18-8-112, C.R.S. 2019, and impersonating a public servant, section 18-8-113, C.R.S. 2019. Impersonating a peace officer is a class 6 felony,[4] and impersonating a public servant is a class 3 misdemeanor.  § 18-8-112(2); § 18-8-113(3).

¶ 22    While the General Assembly delineated some offenses against peace officers separately from offenses against public servants, other statutes mention only public servants.  In fact, title 18, article 8, part 3 *only* discusses public servants.  Nevertheless, in *In re*

---

[3] A class 2 misdemeanor is punishable by up to 364 days imprisonment, a $1000 fine, or both.  *Id.*
[4] A class 6 felony is punishable by up to eighteen months in prison with a one year mandatory period of parole, a $100,000 fine, or both.  § 18-1.3-401, C.R.S. 2019.

9

*Elinoff*, 22 P.3d 60, 62 (Colo. 2001), the supreme court affirmed the suspension of an attorney for three years for bribing two police officers under section 18-8-302(1)(a), C.R.S. 2019. Similarly, as the *Sena* division noted, another division of our court in *People v. Van De Weghe*, 2012 COA 204, ¶ 13, 312 P.3d 231, 234, accepted without question that the defendant attempted to influence a public servant under section 18-8-306 when he provided false information to a police officer.

¶ 23    Though these decisions are not dispositive, they are consistent with a plain reading of the statutory scheme, which suggests that the General Assembly deliberately separated some offenses against peace officers from those against public servants, while encompassing peace officers in the broader category of public servants for purposes of title 18, article 8, part 3. The General Assembly may have intended to punish more harshly crimes against peace officers in the circumstances noted above, considering that those offenses carry harsher sentences.[5]

---

[5] *See supra* notes 2–4.

¶ 24    Moreover, the General Assembly did not enact alternative legislation defining an attempt to influence a peace officer, and we do not believe it intended to leave such an act unregulated.

¶ 25    Knox argues that an interpretation of section 18-8-306 that considers peace officers to be public servants renders superfluous the offense of false reporting to authorities under section 18-8-111, C.R.S. 2019.  We disagree, and instead adopt the holding in *People v. Blue*, 253 P.3d 1273, 1278 (Colo. App. 2011).  There, the division concluded that false reporting does not constitute a specific instance of attempt to influence a public servant.  *Id.*  Indeed, the crime of false reporting does not require an intent to influence the actions or decisions of a public official; rather, it "penalizes those who provide untruthful information to public officials."  *Id.*  Thus, our interpretation of section 18-8-306 does not render superfluous the offense of false reporting — instead it establishes a separate offense with a separate mens rea.  An individual can provide false information with no intention of influencing authorities, such as when a celebrity uses a pseudonym to protect his or her privacy.  *See id.* at 1277.  A defendant may be convicted of both attempt to influence a public servant and false reporting to authorities.  *Id.*

¶ 26    Accordingly, we conclude that police officers are public servants for purposes of section 18-8-306.

### B.  Multiple Convictions for Attempt to Influence a Public Servant

¶ 27    Knox argues that her convictions for attempt to influence a public servant are multiplicitous in violation of her right to be free from double jeopardy.  She claims that her convictions stemmed from a single, continuous course of conduct; thus, the court erred in entering judgment against her on one count of attempt for each law enforcement official with whom she spoke.  We disagree.

### 1.  Standard of Review

¶ 28    We review this unpreserved double jeopardy issue for plain error.  *See McCoy*, ¶ 19, 442 P.3d at 385; *Scott v. People*, 2017 CO 16, ¶ 12, 390 P.3d 832, 835.  We reverse an unpreserved error only if an error was both obvious and substantial and "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120.  "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Crim. P. 52(b).

## 2. Applicable Law

¶ 29    The Double Jeopardy Clauses of the United States and Colorado Constitutions preclude multiple convictions and punishments for the same crime. U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18.

¶ 30    The related concept of "[m]ultiplicity is the charging of the same offense in several counts, culminating in multiple punishments." *Quintano v. People*, 105 P.3d 585, 589 (Colo. 2005). An individual's protection from double jeopardy prohibits multiplicitous charges for the same offense but does not insulate a defendant from being prosecuted for distinct offenses under the same statute. *Id.* at 590. It also does not bar punishment for the same criminal conduct under multiple statutes. *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005).

¶ 31    We determine whether the statute authorizes conviction on discrete charges by measuring the prescribed unit of prosecution, which is "the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses." *Id.* at 215; *Quintano*, 105 P.3d at 589. Once we identify the unit of prosecution, we look to the

evidence to determine whether the defendant's conduct constituted factually discrete offenses. *People v. Vigil*, 251 P.3d 442, 448 (Colo. App. 2010).

> To determine whether offenses are factually distinct, courts have considered (1) whether the acts occurred at different times and were separated by intervening events; (2) whether there were separate volitional acts or new volitional departures in the defendant's course of conduct; and (3) factors such as temporal proximity, the location of the victim (e.g., if the victim was moved), the defendant's intent as indicated by his or her conduct and utterances, and the number of victims.

*People v. McMinn*, 2013 COA 94, ¶ 22, 412 P.3d 551, 558. If we determine that the statute intended to create an ongoing and continuous offense, we must conclude that multiplicitous charges under the statute violate the defendant's double jeopardy rights.

¶ 32    Therefore, because the prosecution charged Knox with committing distinct offenses under the same statute, we apply a two-tiered analysis — "(1) whether the unit of prosecution prescribed by the legislature permits the charging of multiple offenses; and (2) whether the evidence in support of each offense justifies the charging of distinct offenses." *Quintano*, 105 P.3d at 590.

14

¶ 33    This analysis requires us to look to the statutory language to "ascertain and effectuate the legislative intent." *Woellhaf*, 105 P.3d at 215.  Thus, we, again, apply principles of statutory interpretation to determine whether section 18-8-306 authorizes charges of the same offense in multiple counts.  *Supra* Part II.A.1.  In so doing, we are mindful of the presumption against classifying a crime as a continuing offense.  *People v. Thoro Prods. Co.*, 70 P.3d 1188, 1192 (Colo. 2003); *People v. Johnson*, 2013 COA 122, ¶ 14, 327 P.3d 305, 307; *People v. Pérez*, 129 P.3d 1090, 1092 (Colo. App. 2005).

### 3.  Unit of Prosecution

¶ 34    As noted, section 18-8-306 states, in pertinent part:

> Any person who attempts to influence any public servant by means of deceit . . . with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

We look first to the plain language and agree with the People's contention that the relevant *actus reus* is an "attempt to influence." The statute does not define "attempt"; however, as relevant here, Black's Law Dictionary defines the term as "[t]he act or an instance

of making an effort to accomplish something, esp. without success." Black's Law Dictionary 158 (11th ed. 2019). We do not believe that the statutory definition of "attempt," defined in section 18-2-101, C.R.S. 2019, applies to section 18-8-306. *See People v. Riley*, 2015 COA 152, ¶¶ 27-29, 380 P.3d 157, 163-64 (concluding that incorporating the statutory definition of "attempt" would be illogical because section 18-8-306 "proscribes *attempting* to influence a public servant," and there is no offense of "influencing a public servant").

¶ 35  Thus, to attempt to influence a public servant, a person must knowingly make an effort to influence a public servant. We conclude, just as the *McMinn* division did when it considered the units of prosecution for vehicular eluding and eluding a police officer, that the plain language of section 18-8-306 considers "a particular volitional act against a particular officer." *McMinn*, ¶¶ 25, 31, 412 P.3d at 558-59. However, the discrete offenses are not defined by the number of officers involved, but rather by the distinct volitional acts of attempt to influence. *See id.* at ¶ 26, 412 P.3d at 558.

¶ 36    We agree with Knox that defining the number of offenses solely by the number of officers involved would lead to an absurd result — for instance, if a person were charged with five offenses for *simultaneously* lying to five officers.  Nevertheless, this scenario is distinct from one in which a person lies to five officers at five separate times, with each act isolated in time and constituting a volitional departure in the course of conduct.  *See Quintano,* 105 P.3d at 592.

¶ 37    Accordingly, we hold that a defendant may be charged with multiple offenses of attempting to influence a public servant arising from a single criminal episode when the discrete offenses were separated in time and location and comprised separate volitional departures.  *See id.*; *see also McMinn,* ¶ 31, 412 P.3d at 559.

### 4.  Evidence in Support of Each Offense

¶ 38    We next apply the unit of prosecution to the circumstances present here.  In so doing, we ask whether Knox's conduct constituted discrete offenses supporting her three convictions for attempting to influence a public servant.

¶ 39    The People argue that Knox's report to the dispatcher, her account to Officer Smith, and her statement to Officer LeDoux were

three separate incidents. The evidence at trial supports this conclusion: (1) Knox called dispatch to inaccurately report her involvement in an accident that had just taken place; (2) Officer Smith testified that he arrived on the scene and immediately took Knox's initial statement, gathering details to enable him to locate the alleged perpetrator; and (3) as she was transported to the hospital for treatment, Knox gave a more detailed statement to Officer LeDoux.

¶ 40 Each of these statements took place at distinct times, were recited to different public servants, and were separated by intervening events — the dispatcher called police to the scene; Officer Smith took Knox's statement before the ambulance arrived; and after the ambulance arrived, Officer LeDoux spoke with Knox during their ride to the hospital. Moreover, each statement was given in furtherance of her goal to seek medical attention and, likely, initiate a police report to enable Knox to file a claim against Diedrichs-Giffin's insurance company.

¶ 41 Accordingly, we disagree with Knox's contention that all three statements arose from a single course of conduct — the 911 call.

Instead, we uphold her three convictions for attempt to influence a public servant.

### C. Proof Beyond a Reasonable Doubt

¶ 42    Having determined that police officers are public servants under section 18-8-306 and that the statute allows for multiple convictions, we address Knox's argument that the prosecution failed to meet its burden of proof to establish that she committed the three attempts to influence a public servant. She supports this contention by alleging that (1) the prosecution failed to prove that police officers are public servants and (2) she did not possess the necessary mens rea to attempt to influence the dispatcher. We disagree.

### 1. Standard of Review

¶ 43    We review de novo whether the evidence presented at trial was sufficient to sustain a conviction. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).

### 2. Applicable Law

¶ 44    We engage in a substantial evidence test to determine whether the evidence presented at trial sufficiently sustains the conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). Under this test,

19

we ask "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). We give the prosecution the benefit of every reasonable inference that may fairly be drawn from the evidence, and we do not consider vague, speculative, or imaginary doubt to be reasonable doubt. *Id.* at 1292.

### 3. Analysis

¶ 45    Having already established that Officers Smith and LeDoux were public servants, we need only address whether the prosecution proved that the dispatcher was a public servant and that Knox attempted to influence the dispatcher.

¶ 46    First, the prosecution established that the dispatcher worked for the Arvada Police Department, a government agency, and was legally authorized to answer incoming emergency 911 calls and dispatch those calls for service. When the dispatcher responded to Knox's call and dispatched police officers and emergency

20

responders, she was working in accordance with her official duties. We conclude that, viewing the evidence in the light most favorable to the prosecution, reasonable jurors could conclude that the dispatcher was a public servant, particularly under the relevant, jointly approved jury instruction:

> "Public servant" means any officer or employee of government, whether elected or appointed, and any person participating as an adviser, consultant, process server, or otherwise in performing a government function, but the term does not include witnesses.

*Accord* COLJI-Crim. F:306 (2018).

¶ 47 Second, by contacting dispatch, Knox intended to "alter or affect" the dispatcher's actions (i.e., sending police and emergency responders),[6] as outlined in section 18-8-306. Thus, we conclude that reasonable jurors could also conclude that Knox intended to influence the dispatcher's actions, not merely convey information.

---

[6] Knox does not make a similar factual argument regarding the two police officers, instead maintaining only her earlier argument that they were not public servants.

21

## III. Criminal Extortion

¶ 48    Knox contends, the People concede, and we agree that Knox's threats of litigation to cause "economic hardship" were insufficient to prove her guilty of criminal extortion.

¶ 49    As pertinent here, a person commits criminal extortion if

> (a) The person, without legal authority and with the intent to induce another person against that other person's will to perform an act or to refrain from performing a lawful act, makes a substantial threat to . . . cause economic hardship . . . to . . . the threatened person or another person; and
>
> (b) The person threatens to cause the results described in paragraph (a) of this subsection (1) by:
>
> (I) Performing or causing an unlawful act to be performed . . . .

§ 18-3-207. Thus, as a Colorado federal district court decision explained, proof of extortion requires the prosecution to prove

> (i) a person, lacking legal authority to do so, ma[de] a threat to . . . cause economic . . . harm to the victim, with the intent of coercing the victim to perform an act or refrain from performing an act, and (ii) the person propose[d] to do so by resorting to an unlawful act or by threatening to invoke action by a third party, such as law enforcement.

*Witt v. Snider*, Civ. A. No. 16-cv-01303-MSK-CBS, 2017 WL 2215252, at *5 (D. Colo. May 19, 2017). However, making a threat to do something while lacking express legal authority is not tantamount to committing an unlawful act. *See Whimbush v. People*, 869 P.2d 1245, 1249 (Colo. 1994). The defendant must have made a threat *to commit an unlawful act. Id.*

¶ 50 Because no Colorado court has addressed this issue, we look to the decisions of other jurisdictions that reached this conclusion. As both parties mention, the overwhelming majority of jurisdictions addressing the unlawful act requirement in the federal analogue conclude that "[a] threat to litigate, by itself, is not necessarily 'wrongful' within [this context]. After all, under our system, parties are encouraged to resort to courts for the redress of wrongs and the enforcement of rights." *United States v. Pendergraft*, 297 F.3d 1198, 1206 (11th Cir. 2002); *see Deck v. Engineered Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003); *Rendelman v. State*, 927 A.2d 468, 481 (Md. Ct. Spec. App. 2007), *aff'd*, 947 A.2d 546 (Md. 2008); *see also Zueger v. Goss*, 2014 COA 61, ¶ 42, 343 P.3d 1028, 1038 (Colo. App. 2014) ("Settlement implies a compromise; it does not establish conduct against one's will.").

¶ 51    Accordingly, Knox's threat to sue Diedrichs-Giffin did not suggest that she intended to act unlawfully; instead, she gave Diedrichs-Giffin the option to settle her alleged claim to avoid litigation. We join other jurisdictions in concluding that the threat of litigation does not constitute criminal extortion. Accordingly, we vacate Knox's conviction for criminal extortion.

## IV. Jury Instruction on Mens Rea

¶ 52    Knox contends that the district court erred in not instructing the jury on the mens rea for each element of the criminal extortion charge. We need not address this issue because we vacate her criminal extortion conviction.

## V. Conclusion

¶ 53    Accordingly, the judgment is affirmed in part, and the criminal extortion conviction is vacated.

JUDGE FREYRE and JUDGE PAWAR concur.